(No. 50311.-)

LILLIAN CASSON *et al.*, Appellees, v. GORDON NASH, Appellant.

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

Peterson, Ross, Schloerb & Seidel, of Chicago (Robert G. Schloerb, John P. Moe, Ellen J. Kerschner, and Robert S. Milnikel, of counsel), for appellant.

Mahoney & McArdle, of Chicago (Michael J. McArdle, of counsel), for appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

This action arose as the result of a collision between an automobile driven by Lillian Cook, in which plaintiffs, Lillian Casson and Josephine Pustz, were passengers, and an automobile driven by defendant Gordon Nash. Casson and Pustz sought damages from Nash for their personal injuries allegedly caused by Nash's negligence. Following a jury verdict in favor of Nash, the circuit court of Cook County entered judgment on the verdict. The appellate court, in a unanimous decision, reversed and remanded for a new trial. (54 Ill. App. 3d 783.) We granted Nash leave to appeal.

Nash contends that the appellate court erred in two respects. He first contends that the appellate court erred in limiting his right to inform the jury of the existence of a loan-receipt agreement between the plaintiffs and a dismissed defendant. Nash also contends that the appellate court wrongfully decided that the trial court erred in admitting into evidence only two of the three photographs of Cook's automobile which were offered by plaintiffs.

On January 25, 1972, Cook was driving her car to

work in Chicago after picking up Casson and Pustz. Proceeding northbound on Ashland Avenue, Cook approached the intersection at 119th Street. As Cook entered the intersection, Nash, traveling westbound on 119th Street, also entered the intersection. The front end of Nash's automobile collided with the passenger side of Cook's vehicle, whereupon Cook's vehicle continued forward and ran into a ramp abutment. Although several lawsuits resulted from this incident, only the actions brought by Casson and Pustz are relevant to this appeal. Plaintiffs originally sued both Cook and Nash. Prior to trial, however, each plaintiff entered into a separate loan-receipt agreement with Cook, thereafter dismissing Cook as a defendant. Except for the amounts of money, the agreements were identical. Casson's agreement with Cook consisted of the following:

"Lillian Casson, hereby acknowledges receipt from Lillian Cook of the sum of Twenty-Two Thousand Twenty-Three ($22,023.00) Dollars, as a loan without interest, which sum I promise to repay from, and only from, any judgment I am or become legally entitled to collect from Gordon Nash. This agreement is in no way to be construed as evidence of wrongdoing or fault on the part of Lillian Cook. Lillian Cook makes no admission of fault and all parties hereto recognize the fault and gross negligence of Gordon Nash, his excessive speed, carelessness, failure to keep a lookout and reckless driving as the cause of the serious and near fatal injuries of the parties hereto.

It is further agreed, that said monies will be repaid on a 100% basis from and only from the proceeds of Satisfaction of Judgment after verdict by Allstate Insurance Company, as insurer of Gordon Nash, in excess of Forty-Four Thousand ($44,000.00) Dollars. That if a verdict or judgment is returned in the sum of less than Forty-Four Thousand ($44,000.00) Dollars, [sic] Allstate Insurance Company, as insurer of Gordon Nash, I shall only be responsible to pay 50% of said monies received from Lillian Cook. I further agree that I shall use and

pursue any reasonable and legal means which are available to me to collect any judgment which I obtain against the said Gordon Nash."

Plaintiffs then presented a motion *in limine* requesting that Nash's attorney be precluded from referring to the loan agreements during his examination of plaintiffs at trial. The trial judge denied the motion, ruling that Nash's attorney would be permitted to question plaintiffs regarding the agreements.

At trial, plaintiffs again objected to any reference to the loan-receipt agreements, but the court allowed Nash's attorney to question plaintiffs regarding the agreements. The court refused, however, to admit the actual loan documents into evidence. Cook, the dismissed defendant and driver of the vehicle in which plaintiffs were passengers, did not testify.

Defendant Nash contends that the appellate court erred in holding that it was improper for his attorney to question plaintiffs about their loan-receipt agreements with Cook. Defendant asserts that, under *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, the existence of the agreements was a proper factor for the jury to be aware of in considering the plaintiffs' credibility and the weight to be given their testimony.

In *Reese,* this court first approved the use of a loan-receipt agreement as a type of settlement device, but expressed its concern over having a dismissed defendant testify for the plaintiff in his case against the remaining defendant. (55 Ill. 2d 356, 364.) When, as in the case at bar, the agreement provides for the the dismissed defendant to be repaid only from the plaintiff's recovery against the remaining defendant, the dismissed defendant obviously will have an interest in the plaintiff's recovery. Consequently, the dismissed defendant may be more inclined to testify in favor of the plaintiff than might otherwise be true. The *Reese* court, therefore, ruled that

the remaining defendant should be protected by being allowed to question the dismissed defendant as to the existence of the agreement. The remaining defendant would thereby have the opportunity to expose to the jury the witness' possible bias or prejudice as a result of the agreement. In *Reese,* the dismissed defendant was a railroad which had entered into a loan-receipt agreement with the plaintiff. When employees of the railroad testified for the plaintiff, the court allowed the remaining defendant to cross-examine them as to the existence of the agreement. This court approved of this practice, noting that the employees of the dismissed defendant had an interest in the plaintiff's recovery, as any recovery would at least partially inure to their employer. The court cautioned, however, that evidence of the agreement is to be considered only as it relates to the motive and credibility of witnesses, and is not to be considered on the issues of liability or damages. 55 Ill. 2d 356, 364-65; accord, *Bedford School District v. Caron Construction Co.* (1976), 116 N.H. 800, 367 A.2d 1051.

Here, the defendant was allowed to question not the dismissed defendant, but the plaintiffs themselves, as to the existence of the agreement. We agree with the appellate court that this was error. The relevant principle that emerges from *Reese* is that when a witness whose interest in the outcome of the case is not apparent to the jury may be influenced by the existence of a loan-receipt agreement, the jury may properly consider the effect of the agreement on the credibility of that witness. The plaintiffs here certainly stood to gain by a recovery against Nash, but this is true in every case. A plaintiff always has an interest in his own recovery. Because the plaintiff's interest is already apparent (see McCormick, Evidence sec. 274, at 665 (2d ed. 1972)), there is no need for the jury to be informed about the loan-receipt agreement. To expose the existence of the agreement to the jury here was

therefore improper.

In addition to being improper, permitting questioning of the plaintiffs as to the loan-receipt agreements was prejudicial. The risk of prejudice to a plaintiff is one of the reasons why the agreement is not admitted substantively. (*Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 364-65; *Bedford School District v. Caron Construction Co.* (1976), 116 N.H. 800, 804-05, 367 A.2d 1051, 1054-55.) As far as the plaintiffs and remaining defendant were concerned, the loan arrangements were similar to an ordinary settlement. In return for a payment of money, plaintiffs agreed not to sue Cook, and any money recovered against Nash would be offset, in effect, by the amounts plaintiffs agreed to pay back to Cook out of the recovery. Evidence of settlement with one defendant is inadmissible against a plaintiff in his action against a remaining defendant. (See *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 135; *Sleck v. Butler Brothers* (1964), 53 Ill. App. 2d 7, 12-13; *Shanowat v. Checker Taxi Co.* (1964), 48 Ill. App. 2d 81, 91-92; *Walton v. Tull* (1962), 234 Ark. 882, 890-91, 356 S.W.2d 20, 24-25.) The prejudice was exacerbated when, in closing argument, Nash's attorney suggested that the jury consider that the plaintiffs had already been compensated.

Defendant also contends that the appellate court erred in holding that the trial court improperly refused to allow a third photograph of Cook's automobile into evidence after allowing the first two. Three photos, one of the passenger's side of the auto and two of the front end, had been taken by Cook's brother-in-law at the police pound approximately one week after the collision. Plaintiffs attempted to introduce these photographs into evidence while Cook's brother-in-law was on the stand. On cross-examination, however, the witness admitted that he did not know what, if anything, had happened to the automobile during the week-long period between the time

of the collision and the time that he took the photographs. Nash's attorney objected, therefore, on the ground of insufficient foundation, but only to the introduction of the photograph of the passenger side of the automobile. The trial court sustained this objection. Thus, only the two photographs to which no objection had been made and which depicted only the damage to the front end of the vehicle were admitted. In holding this to be error, the appellate court found that it was prejudicial to the plaintiffs to allow the jury to see only the two photographs of the front-end damage.

Admission of photographs of the automobile into evidence required some foundation to establish that the automobile, as photographed, was in substantially the same condition as it was at the time of the collision. (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 517; *Williams v. Stewart* (1971), 2 Ill. App. 3d 528, 530.) Cook's brother-in-law testified that the photographs accurately depicted the condition of the automobile at the pound, but he could not state that the auto was then in the same condition as it was immediately following the collision. Plaintiffs offered no testimony that the photographs accurately depicted the condition of the automobile at the scene of the collision. Consequently, an insufficient foundation was laid for the admission of any of the photographs. Although an improper foundation was laid, defendant consented to the admission of two of the three photographs. The trial court therefore properly allowed them into evidence. A court is not required to exclude objectionable evidence absent an objection. (*Hill v. Meister* (1971), 133 Ill. App. 2d 678, 682; *People v. Williams* (1963), 28 Ill. 2d 114, 116; *People v. Henry* (1954), 3 Ill. 2d 609, 614.) In light of the objection, however, the trial court thereafter properly denied admission of the third photograph. Regardless of any prejudicial effect that the two admitted photographs might have had

on the minds of the jurors, a party cannot complain that evidence which he put into the record is prejudicial to him. (*People v. Henry* (1954), 3 Ill. 2d 609, 614.) We agree with the defendant, therefore, that the trial court did not err in allowing into evidence the first two photographs while excluding the third. The trial court's error, however, in permitting defendant's attorney to question plaintiffs as to the existence of the loan-receipt agreements is sufficient to entitle the plaintiffs to a new trial.

For the foregoing reasons, the judgment of the appellate court is affirmed, and the cause is remanded for a new trial.

*Affirmed and remanded.*